IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAVELLE PARMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:19-CV-265-WKW |
| ) | [WO] |
| BANK OF AMERICA, N.A., and ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| d/b/a Mr. Cooper, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Whether the court has jurisdiction turns on a single sentence in the complaint: "Plaintiff prays . . . this Court will make and enter and Order directing Defendants to . . . mark her mortgage satisfied." (Doc. # 2-1, at 4.) Though the mortgage here was never worth more than $55,110.80, evidence shows that the underlying property is worth at least $88,501. (Doc. # 2-2, at 11; Doc. # 2-3, at 2.) And though there is not so much as a whiff of foreclosure in the air, decisions from this court, the former Fifth Circuit, and the Eleventh Circuit instruct that when a plaintiff seeks an order extinguishing a mortgage, the amount in controversy is, for jurisdictional purposes, the value of the underlying property. The motion to remand this action to state court (Doc. # 14) is therefore due to be denied.

# I. STANDARD OF REVIEW

"If a state-court complaint states a case that satisfies federal jurisdictional requirements, a defendant may remove the action to federal court" under 28 U.S.C. § 1446. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1060 (11th Cir. 2010). "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008). But if a court has jurisdiction, it has a "virtually unflagging obligation" to exercise it. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

Federal courts have "diversity jurisdiction" over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). "Where a plaintiff fails to specify the total amount of damages demanded, . . . a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Leonard*, 279 F.3d at 972.

# II. BACKGROUND

In 1999, Plaintiff Lavelle Parmer borrowed $55,110.80 from Defendant Bank

of America, N.A., agreeing to make monthly payments for fifteen years at a fixed interest rate of 10.2 percent. (Doc. # 2-2, at 11.) That promissory note was secured by a mortgage on her home in Randolph County, Alabama. (Doc. # 17-1, at 2, 8.) In 2013, Bank of America transferred its interest in the note to Defendant Nationstar Mortgage, LLC. (Doc. # 2-1, at 2.) According to 2018 records, the tax appraisal of the property is $88,501. (Doc. # 2-3, at 2.)

Ms. Parmer alleges that for all fifteen years, she "faithfully" and "timely" paid what Bank of America told her to pay: $633.36 a month. (Doc. # 2-1, at 2; *see* Doc. # 2-2, at 11.) She stopped making payments in 2014, "when she . . . paid what was believed to be her last payment due." (Doc. # 2-1, at 3.) According to Ms. Parmer, however, the amount of the monthly payments should have been $598.98, meaning that over the years she overpaid $6,188.40. (Doc. # 2-1, at 2; *see* Doc. # 14, at 2.) To make matters worse, in January 2019 Nationstar said that Ms. Parmer still owed $27,631.84, including $18,758.08 in principal. (Doc. # 2-1, at 3; Doc. # 14-1, at 4.) But Nationstar has not, so far as the record shows, threatened or moved to foreclose.

In March 2019, Ms. Parmer filed this lawsuit in the Circuit Court of Randolph County, Alabama. Her complaint has two counts. Count One says that Defendants committed fraud by intentionally telling Ms. Parmer to pay more than was necessary to amortize her mortgage. On this count, Ms. Parmer "demands judgment against Defendants for all sums she is entitled to under the pleadings and proof." (Doc. # 2-

1, at 3.) Count Two asserts that Defendants are in breach of contract because they insist that a balance is owed when, in fact, Ms. Parmer is entitled to a refund. On this count, Ms. Parmer "demands that her mortgage be satisfied" and asks the court to "enter an Order directing the Defendants to refund excess payments to her and to mark her mortgage satisfied." (Doc. # 2-1, at 4.)

Defendants filed a timely notice of removal. *See* 28 U.S.C. § 1446(b). (Docs. # 2, 2-4.) Ms. Parmer now moves to remand, arguing that the jurisdictional amount-in-controversy requirement is not met. (Doc. # 14.) Defendants oppose remanding to state court. (Doc. # 17.) The motion to remand is now ripe.

## III. DISCUSSION

No one disputes that this case is between citizens of different states. Bank of America is a citizen of North Carolina, Nationstar is a citizen of Delaware and Texas, and Ms. Parmer is a citizen of Alabama. (Doc. # 2, at 2–5.) So if the "value" of "the matter in controversy" exceeds $75,000, then the court has diversity jurisdiction. 28 U.S.C. § 1332(a).

Ms. Parmer's complaint does not specify a total amount of damages (*see* Doc. # 2-1), so Defendants must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Leonard*, 279 F.3d at 972. Defendants have not satisfied that burden by reference to any request for damages. Ms. Parmer alleges she overpaid Defendants $6,188.40. She prays for that amount in damages, plus "all

4

sums she is entitled to" on her fraud claim. (Doc. # 2-1, at 3–4.)  But her complaint does not refer to punitive damages.  *Cf. Collins v. Shelley ex rel. Shelley*, 514 So. 2d 1358, 1361 (Ala. 1987) (holding plaintiffs were limited to compensatory damages on a wantonness claim when they "did not state a claim for punitive damages in the ad damnum clause of their complaint").  And Ms. Parmer and her attorney "expressly stipulate that under no circumstances will [they] request or accept any award of damages in excess of $75,000."  (Doc. # 14, at 2.)[1]

So if the court has diversity jurisdiction, it must be because Ms. Parmer seeks declaratory or injunctive relief.  "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."  *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (citing *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218–20 (11th Cir. 1997)).  "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted."  *Id.*  Ms. Parmer's complaint prays for injunctive or declaratory relief:  She seeks a court order compelling Defendants

---

[1] A post-removal stipulation cannot deprive the court of jurisdiction that the court already has.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938); *Bankhead v. Am. Suzuki Motor Corp.*, 529 F. Supp. 2d 1329, 1334 (M.D. Ala. 2008).  But this stipulation does help clarify the amount in controversy.  *See Stokes v. Homes*, No. 08-cv-806, 2009 WL 413755, at *2 (M.D. Ala. Feb. 18, 2009); *Moss v. Voyager Ins. Cos.*, 43 F. Supp. 2d 1298, 1303 (M.D. Ala. 1999); *see also Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003); *Andrews v. Med. Excess, LLC*, 863 F. Supp. 2d 1137, 1142 (M.D. Ala. 2012).

"to mark her mortgage satisfied." (Doc. # 2-1, at 4.) Jurisdiction therefore turns on the monetary value of the benefit that would flow from that order.

Ms. Parmer's desired order would effectively extinguish Defendants' interest in the property. To see why, consider what a mortgage is. At bottom, a mortgage is a contract that secures payment of a promissory note (that is, a loan). "Execution of a mortgage passes legal title to the mortgagee" subject to a condition subsequent that "upon payment of the debt, legal title revests in the mortgagor." *Trauner v. Lowrey*, 369 So. 2d 531, 534 (Ala. 1979).[2] That is, until the loan is fully paid, the mortgagor has merely an "equity of redemption" in the property. *Bailey Mortg. Co. v. Gobble-Fite Lumber Co.*, 565 So. 2d 138, 143 (Ala. 1990); *see Mapp v. Deutsche Bank Nat'l Tr. Co.*, No. 08-cv-965, 2009 WL 3664118, at *2 (M.D. Ala. Oct. 28, 2009) (noting these rules). When the promissory note is paid in full, however, the mortgagee "must on request in writing of the mortgagor . . . enter the fact of payment or satisfaction on the margin of the record of the mortgage." Ala. Code § 35-10-27. "Such entry operates as a release of the mortgage . . . and is a bar to all actions thereon." *Id.* In other words, marking the mortgage "satisfied" effectively "invests" the mortgagor "with the legal title" to the property. *Trauner*, 369 So. 2d at 534. It strips legal title from the mortgagee. *See* Ala. Code § 35-10-26 ("The payment or satisfaction of the

---

[2] The debtor (here, Ms. Parmer) is the mortgagor. *Black's Law Dictionary* 1167 (10th ed. 2014). The lender (originally Bank of America, now Nationstar) is the mortgagee. *Id.* at 1166.

real property mortgage debt divests the title passing by the mortgage."); *Cottingham v. Citizens Bank*, 859 So. 2d 414, 419 (Ala. 2003) ("Payment of the mortgage debt before foreclosure divests the title of the mortgagee.") (cleaned up).

Ms. Parmer insists that she has paid her debt in full. For that reason, she seeks an order that would invest her with legal title to the property. An object of the litigation is therefore to secure legal title to the property, free of any encumbrances.

In other cases about clearing up title to property, the value of the property was the amount in controversy. Consider cases about injunctions against foreclosure. In *Mapp v. Deutsche Bank National Trust Co.*, for example, the mortgagor wanted to stop foreclosure on his home, and the court held that the amount in controversy was measured by the value of the property. 2009 WL 3664118, at *4. Foreclosure would have terminated the mortgagor's equity of redemption, *id.* at *2, and an injunction against foreclosure would have given him the rights to occupy the property and retain his interest in it, *id.* at *4. Thus, the property as a whole was at stake. *Id.*; *see also Hosseinzadeh v. Green Point Mortg. Funding, Inc.*, 577 F. App'x 925, 927 (11th Cir. 2014) (per curiam) (holding in a suit to enjoin foreclosure that the property value set the amount in controversy); *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) ("In actions enjoining a lender from transferring property and preserving an individual's ownership interest, it is the property itself that is the object of the litigation; the value of that property represents the amount in controversy.").

The same rule applies in quiet title actions. In one such action decided almost a century ago, *Frontera Transportation Co. v. Abaunza*, 271 F. 199 (5th Cir. 1921), a mortgagor made its final payment, but the mortgagee refused to accept the payment and threatened to foreclose. *Id.* at 199–200. The mortgagor sued "to remove a cloud on the title." *Id.* at 201. The amount of the final payment was less than the amount-in-controversy requirement, but the value of the property exceeded the jurisdictional threshold. *Id.* at 200. The former Fifth Circuit held that the amount in controversy was the value of the property. *Id.* at 201. In dicta, the court stated that the outcome would have been the same if the mortgagee had accepted the final payment but still "refused to surrender [the mortgagor's] notes, or to cancel [the] mortgage." *Id.*

*Frontera* is good law. For one reason, the decisions of the former Fifth Circuit are binding. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). For another, more recent cases have reaffirmed *Frontera*'s holding. *See Orton v. Matthews*, 572 F. App'x 830, 831 (11th Cir. 2014) (per curiam) ("In a quiet title action, the amount in controversy . . . is the value of the property."); *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547 (5th Cir. 1961) (stating "courts look to the value of the property involved rather than the damages that might be suffered . . . in suits to remove a cloud from the title"); *Mapp*, 2009 WL 3664118, at *3 (citing *Frontera* with approval); *see also Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (articulating the same rule).

These cases demonstrate a general rule that when a party seeks to clear up title to property (thus making it free of encumbrances), the value of the property is the amount in controversy. Ms. Parmer seeks unencumbered legal title to the property. The order that she prays for would eliminate Defendants' interest in the property and would invest her with legal title. So even though the value of the mortgage has never been more than $55,110.80, the amount in controversy is $88,501 — the property's appraisal value. *Mapp*, 2009 WL 3664118, at *4. Though perhaps counterintuitive, this is what the law prescribes. *See* Charles Dickens, *Oliver Twist* 422 (Oxford 2008) (1839) (observing that the law is not always what someone expects it to be).

## IV. CONCLUSION

It is ORDERED that Plaintiff's Motion to Remand (Doc. # 14) is DENIED.

DONE this 20th day of June, 2019.

/s/ W. Keith Watkins<br>UNITED STATES DISTRICT JUDGE